UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

BETTY BOLES                           CIVIL ACTION NO. 03-1327

VERSUS
                                      JUDGE JAMES

ADMINISTRATOR OF THE
CHASE LONG TERM DISABILITY            MAGISTRATE JUDGE HAYES
PLAN THROUGH LIBERTY MUTUAL
ASSURANCE COMPANY OF BOSTON

## REPORT AND RECOMMENDATION

Before the undersigned magistrate judge, on reference from the district court, is this Employees Retirement Income Security Act ("ERISA") case, 29 U.S.C.1001 et seq. This matter is ready for decision on briefs on the merits in accordance with the court's ERISA Case Order (Doc. Nos. 13, 20, 22, and 25).

## Facts

Claimant, Betty Boles, is a former employee of one of Chase's affiliated companies and is covered by a Group Disability policy issued to her employer. Defendant Liberty Mutual was the claims administrator as well as the issuer of the insurance policy. Boles based her application for disability benefits under the policy on a claim that she was disabled from her own occupation due to chronic pain, depression, fatigue, and anxiety caused by severe fibromyalgia. Boles was granted short term disability benefits on various dates. (see, e.g., Administrative Record, pp. 000262 and 000372) Her initial request for long term benefits was filed on July 24, 2000, and denied on November 22, 2000. (Administrative Record, pp.000316, 000074) On March 4, 2002, plaintiff was granted long term disability benefits with an onset date of March 13, 2000. (Administrative Record,

p. 000989) After she had been paid long term disability benefits from September 9, 2000, to June 15, 2002, the benefits were terminated and her application was finally denied.(Administrative Record, p.000711) The parties are in agreement that the court's review at this time should be limited to a determination of Boles' entitlement to the remainder of her "own occupation" benefits from June 15, 2002, to September 9, 2002.

## Standard of Review

In accordance with this court's standing ERISA Case Order, the parties agree that the Group Long Term Disability Plan issued by defendant, Liberty Mutual, to Chase is an employee welfare benefit plan, as defined by the provisions of ERISA, that this case is governed by ERISA and that all state law claims are preempted. The parties also agree that the Plan provides the administrator with discretionary authority to interpret the provisions of the Plan and to make findings of fact and determine eligibility for benefits. Claimant argues that a surveillance tape is missing and should be made part of the administrative record. Defendant claims that the administrative record is complete. The parties are in agreement that, although the standard of review is one of abuse of discretion and/or arbitrary and capricious, because the administrator is both insurer and administrator and thus has a financial conflict of interest, the court may give at least slightly less deference to the administrator's decision. *Vega v. National Life Insurance Services, Inc.*, 188 F.3d 287, 299 (5th Cir. 1999).

## The Plan

The Long Term Disability Plan provides two periods of coverage:

a. A 24 months "own occupation benefits" where disability is defined as inability to perform one's own occupation on an "active employment" basis;

      b.      Past 24 months disability period when disability is defined as inability to perform with reasonable continuity all of the material and substantial duties of his own or any other occupation on an active employment basis. (Administrative Record, p. 000711).

Again, the parties are in agreement that because the plaintiff has not received the entire 24 months "own occupation" benefits, no administrative proceedings regarding "own or any other occupation" benefits have been held. Thus, should the court find that "own occupation benefits" are due, this matter would need to be remanded for administrative consideration of plaintiff's entitlement to "own or any other occupation" benefits.

### The Medical Records

The record reveals that Boles was treated primarily by Dr. John Hull, a rheumatologist, but also by Dr. Jay Weiss, a psychiatrist. A review of those records and sworn statements, along with the records of Dr. Greg Vigna, defendant's IME doctor, show that their opinions were as follows:

Dr. John Hull, the only rheumatologist to examine or treat the plaintiff, opined that the plaintiff is incapable of performing even a desk job because of the amount of stiffness, pain, and fatigue she suffers as a result of severe fibromyalgia. (Administrative Record, pp. 000745-747) Dr. Hull stated that both Dr. Vigna and the social security Administrative Law Judge lack an understanding of the basic cause of disability in persons suffering from severe fibromyalgia. Dr. Hull explained that a finding of full range of motion is consistent with the plaintiff's condition because the problem is not strength or range of motion, but post-exertional pain and chronic fatigue. In severe cases of fibromyalgia, such as the plaintiff's, the post-exertional pain and chronic fatigue are disabling, regardless of strength or range of motion. (Administrative Record, pp. 918-919)

Dr. Jay Weiss, the plaintiff's psychiatrist, opined that, although the plaintiff's depression and anxiety were secondary to her severe pain, they were in fact present, and the plaintiff's condition was such that she was incapable of working. He also stated that the severity of her pain would interfere with her ability to concentrate and would cause her to be irritable and unable to be an effective supervisor. (Administrative Record, pp. 000756-758, 909-911)

While Dr. Greg Vigna, the defendant's IME doctor, stated that he believed the plaintiff was capable of working at a very light level, he admitted that he had not taken her psychiatric condition into consideration in forming his opinion, that he had not taken her headaches into consideration, and that he agreed that a person can be capable of sitting constantly, stair climbing, walking, sustained bending or reaching, crawling, and kneeling on an occasional basis and yet still be disabled from working. He also admitted that he did not know the material or substantial duties required of the plaintiff's own occupation. (Administrative Record pp. 000846-848, 898-906) In fact, Dr. Vigna actually confirmed Dr. Hull's diagnosis of fibromyalgia, and specifically declined to render an opinion regarding any disability resulting from plaintiff's chronic pain and psychiatric issues, deferring to Dr. Hull and Dr. Weiss. (See Dr. Hull's sworn statement, Administrative Record, beginning at p.000523; Dr. Vigna's sworn statement and written report, Administrative Record, beginning at pp. 000863 and 000420 respectively; and Dr. Weiss's sworn statement, Administrative Record, beginning at p. 001002).

While Dr. Vigna claimed that he had reviewed a surveillance video in preparing for his report, neither he nor the defendant ever produced any such video, and Vigna's record contained only some still photographs allegedly taken from the video. The video is not part of the administrative record produced by the defendant, and therefore will not be considered by this court in determining

4

whether the record clearly supports its decision. The photographs from the surveillance (Administrative Record, p.473) contain nothing that refutes the opinions and recommendations of the plaintiff's physicians. It should be noted that even if the court were to accept the defendant's claims regarding the contents of the missing video, those claims do not clearly support the defendant's position. The written report of from the surveillance shows that although the plaintiff was observed over four days, August 14-15, 2001 and August 26-27, 2001, very little activity was observed during that time.

The record also contains a statement from Dr. Jan Bagwell, the plaintiff's dentist, who stated that she has treated the plaintiff for years, and that she has personally observed changes in the plaintiff due to chronic pain. Dr. Bagwell is certain that the plaintiff is suffering from severe pain which has caused a complete personality change and which would prevent her from being able to work on any regular basis. (Administrative Record, pp. 914-915)

In response to the plaintiff's brief, the defendant points to nothing in the administrative record that **objectively** refutes the specific findings or recommendations of the plaintiff's treating physicians. While it is evident that the defendant suspected the plaintiff of malingering, the record simply contains no support for that suspicion, and the plaintiff's treating physicians were adamant that she is not.

### Law and Analysis

"An administrator's decision to deny benefits must be 'based on evidence, even if disputable, that clearly supports the basis for its denial.'" *Lain v. UNUM Life Ins. Co. of America*, 279 F.3d 337, 342 (5th Cir. 2002). There must be "concrete evidence" in the administrative record that supports the denial of the claim. *Id*. The administrator's decision should be reversed only if it is arbitrary or

5

capricious, that is, if the record lacks substantial evidence to support the Plan Administrator's benefit determination. See *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999). See also *Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299 (5th Cir. 1999).

Under *Salley v. E. I. DuPont de Nemours & Co.*, 966 F.2d 1011 (5th Cir. 1992), an administrator may not accept the diagnosis of treating physicians and reject their other advice, without independent inquiry. *Salley* at pp. 1015-1016. However, a "treating physician rule," whereby greater deference is accorded a treating doctor's opinion, has been rejected by the Supreme Court. *Black & Decker Disability Plan v. Nord*, 123 S.Ct. 1965(2003).

Plaintiff suggests that, because the administrator is conflicted, its decision is entitled to "more scrutiny." In *Salley*, supra at 1014, the court held that a conflict of interest does not change the standard of review; instead, the court weighs the extent of the conflict in its review of whether the administrator abused its discretion. See also, *Vega v. Nat'l Life Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999). In this case, the record shows that Liberty was both the decision-maker and the payor and thus had a financial interest in the outcome of Ms. Boles' claim. Its monetary conflict of interest must therefore be considered in reviewing the record.

In this regard, the record is significant in that it shows that Liberty first denied the plaintiff's claim because it found that her condition was pre-existing, then, when it became clear that the "pre-existing condition" issue was not viable, it denied the claim because it found that Dr. Hull had not made a proper physical examination for a diagnosis of fibromyalgia. When Dr. Hull pointed out that his records very clearly reflected that his physical exam did include testing of all of the classic trigger point areas used to diagnose fibromyalgia, and that the plaintiff had tenderness at all of them, the defendant finally denied the plaintiff's claim because it claimed that she was capable of working at

a sedentary level, despite the fact that the diagnoses of fibromyalgia, with severe chronic pain not ameliorated by medication, depression, and anxiety were unrefuted, and despite the fact that no doctor who gave an opinion of the plaintiff's ability to work in her own occupation in light of her pain, depression and anxiety, the bases for her claim of disability, stated that she was capable of working. There is no concrete evidence in the administrative record that shows that the plaintiff was malingering, or that her condition had improved at the time her benefits were terminated.

Again, the evidence in the administrative record does not support the administrator's decision. This fact, together with consideration of the defendant's conflict of interest, and a review of the numerous and changing bases on which the administrator attempted to deny the plaintiff's claim, leads to the conclusion that the administrator was arbitrary and capricious in its handling and denial of her claim.

In the denial letter, the administrator found that Dr. Weiss did not consider the plaintiff psychiatrically disabled. A review of Dr. Weiss's report and sworn statement fails to support the administrator on this point. While Dr. Weiss found that Ms. Boles' depression and anxiety are caused by her chronic severe pain, rather than by an underlying psychiatric condition, he confirmed that she does suffer from chronic depression and anxiety and that these problems are caused by her chronic pain. He clearly found that the plaintiff was not malingering, that her pain is chronic and severe, and that her chronic pain has caused her to be psychiatrically disabled. He noted that anyone's pain level can be raised to the point of making him or her unable to concentrate and unable to work. He stated that Ms. Boles falls into this category and that she was unable to work. (Administrative Record pp. 1006-09).

7

The administrator also found that Dr. Vigna was of the opinion that the plaintiff was capable of working at a light duty level. Again, a review of Dr. Vigna's report and sworn statement show that while he opined that she was able to do some light duty work in so far as her abilities to bend, stretch, walk, sit, etc., were concerned, he declined to render an opinion on whether the plaintiff's chronic pain, depression, and anxiety would constitute a disabling condition, and deferred to her other doctors on this issue. Thus, his opinion does not refute the plaintiff's claim that she is disabled due to these factors, nor support the defendant's position that she was not disabled.

In short, there is ample evidence to support, and no reasonable evidence to refute, the plaintiff's claim that she is disabled from performing her own occupation due to chronic pain, depression, and anxiety. Given the evidence in the administrative record, the undersigned finds that the defendant was arbitrary and capricious in denying the plaintiff her 24 months benefits. **It is therefore recommended that the court find in favor of the plaintiff on her claim and that Judgment be entered in her favor for the remainder of her "own occupation" benefits, with interest thereon from date of judicial demand, along with attorney's fees and costs.**

Given the ruling of the undersigned on the relevance and effect of the videotape, it is recommended that no penalties be awarded as a result of the defendant's failure to provide it. In addition, the plaintiff does not appear to have been prejudiced by the defendant's failure to provide a copy of the summary plan description, and it is unclear why she could not have obtained same directly from her employer. Therefore, it is **recommended that her claim for penalties for failure to provide these items be DENIED.**

Finally, it is **recommended that this matter be remanded to the administrator for a determination on the issue of future disability benefits**.

**OBJECTIONS**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have five (5) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within five (5) days after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes his final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FIVE (5) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, in Monroe, Louisiana, on this the 25th day of July, 2005.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE